IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00366-MSK-MEH

G&G INTERNATIONAL, LLC,

      Plaintiff,

v.

CAMSING COMPANY, LLC, and
CAMSING GLOBAL,

      Defendants.

---

## RECOMMENDATION ON MOTION FOR DEFAULT JUDGMENT

---

**Michael E. Hegarty, United States Magistrate Judge**.

Pending before the Court is Plaintiff's Motion for Entry of Default Judgment against

Defendants pursuant to Fed. R. Civ. P. 55(b)(1) [filed May 1, 2009; docket #12].  Pursuant to 28

U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1.C, the motion was referred to this Court to

conduct an evidentiary hearing and to submit proposed findings of fact and a recommendation for

the disposition of the motion [docket #13].  The Court held a hearing on June 5, 2009 at which the

Plaintiff appeared, represented by counsel, and no one appeared for Defendants.  For the reasons

stated herein, the Court recommends that the Motion be **denied**.[1]

---

[1]Be advised that all parties shall have ten (10) days after service hereof to serve and file
any written objections in order to obtain reconsideration by the District Judge to whom this case
is assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those
findings or recommendations to which the objections are being made.  The District Court need
not consider frivolous, conclusive or general objections.  A party's failure to file such written
objections to proposed findings and recommendations contained in this report may bar the party
from a de novo determination by the District Judge of the proposed findings and
recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. §
636(b)(1).  Additionally, the failure to file written objections to the proposed findings and

**FINDINGS OF FACT**

1. The Plaintiff, G&G International, LLC, is a limited liability company duly organized and existing under the laws of the State of Maryland, with its principal place of business located in Aurora, Colorado.  G&G International is a division of G&G Outfitters, Inc., located in Lanham, Maryland.

2. Defendant Camsing Company, LLC is a limited liability company duly organized and existing under the laws of the State of Delaware, with its principal place of business located in Rochester, New York.

3. Defendant Camsing Global has its principal place of business located in Guangzhou, China.

4. William Dolan was, at all relevant times, the President of Camsing Global and Camsing Company.  Vivian Lo was, at all relevant times, the Chair and Chief Executive Officer for Camsing Global and Camsing Company.

5. G&G is in the business of sourcing "raw" goods from various domestic and international companies and/or manufacturers, which it then sells to its own customers who "finish" the "raw" goods in order to produce a marketable product, which they then sell to various retailers. In this case, a domestic company, Thundercreek, approached G&G to provide t-shirts and fleece sweatshirts that Thundercreek was to finish as a licensed and branded product, which then would be sold to the Kohl's department store chain.

---

recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

6.      In anticipation of this project, G&G approached Camsing Global's office in New York to see whether Camsing was interested in bidding on the project.  G&G learned about Camsing after its salesperson, Aaron Frankel, approached G&G's parent company, G&G Outfitters in Maryland, to market Camsing's services.  All international business transactions at G&G were referred to Pete Papilion, Director of Sourcing for G&G, who is located in Aurora, Colorado. Camsing bid on, and was awarded, the project.

7.      In or about March 2008, G&G and Camsing agreed that G&G would issue purchase orders to Camsing Global for a certain number of products, which would meet certain specifications for color, material, weight and size.  Further, G&G and Camsing agreed that the products would be shipped by Camsing and received by Thundercreek on or by dates certain, and that each purchase order would be shipped complete.  In the event Camsing could not meet the shipping deadlines enumerated in the purchase orders, Camsing agreed to delivery penalties ranging from six (6) to twelve (12) percent.  If Camsing was twenty-six (26) or more days late in delivering the respective product, the purchase order was subject to cancellation by Thundercreek with no payment obligation from G&G.  However, G&G was required to make a twenty-five (25) percent deposit to Camsing in connection with each purchase order, which it was to receive back from Camsing in the event the respective purchase order was canceled or otherwise terminated.

8.      Throughout the business relationship, agents of G&G and Camsing communicated numerous times primarily via telephone and email.  However, Mr. Papilion, who was responsible for coordinating the business relationship with Camsing, met personally on several occasions with Mr. Dolan and Ms. Lo to discuss the project.  On one such occasion, Mr. Papilion met with Mr. Dolan and Ms. Lo in G&G's office in Aurora, Colorado.

9.      Pursuant to the sourcing agreement, G&G issued numerous purchase orders to Camsing Global between March 2008 and September 2008 for the products, each of which fixed certain delivery dates to Thundercreek and the requirement that Camsing ship the entirety of the products enumerated in each purchase order. G&G made each of its required deposits and, additionally, G&G paid certain invoice amounts to Camsing for certain of the products.

10.      The purchase orders issued to Camsing reflect G&G's letterhead from its headquarters in Maryland, and the "Ship To" address on each purchase order reflects the same Maryland address.  G&G's Colorado address does not appear on these documents.

11.      In or about the summer 2008, numerous issues arose regarding Camsing's ability to meet its obligations under the agreement, including incorrect fabric weights, incorrect fabric colors, substandard product quality, missing product from shipments, and late or missing shipments.

12.      To attempt to save Thundercreek's purchases and its ability to sell the product as planned, G&G paid $98,379.44 in air freight (necessitated by late shipment) and other miscellaneous related charges that typically would have been assumed by Camsing, with the understanding that this amount would be deducted from ultimate payables to Camsing.

13.      However, as a result of the defective, missing and late products, Thundercreek began to exercise its option to cancel its respective orders, such that G&G became obligated to provide credits to Thundercreek for the defective, missing and late products. Ultimately, Thundercreek canceled all outstanding purchase orders with Camsing pertaining to the project.

14.      In charging back to G&G and cancelling outstanding orders, Thundercreek also returned $97,070.40 of the products it had received, as it was unable to sell the incompletely shipped products to Kohl's and was otherwise unable to use or sell the products.  Because the products had

already been branded with licensed material, G&G is also unable to sell or otherwise use the products.

15.     Despite Thundercreek's chargebacks and cancellations, Camsing never refunded nor otherwise returned the $256,840.87 worth of chargebacks and deposits paid by G&G for products that either never shipped or shipped incomplete.  Nor did Camsing provide any consideration to G&G for the considerable chargebacks made by Thundercreek or the approximately $98,000.00 worth of expenses incurred by G&G, despite the invoice amounts already paid to Camsing beyond the deposit amounts and despite the agreed upon shipment penalties.

16.     The deposits and payments made by G&G to Camsing were transacted through wire transfers originated by G&G Outfitters, Inc., which is located in Lanham, Maryland.  The bank through which the wire transfers originated is BB&T and the bank account holder reflects G&G International LLC listed at the Maryland address.

17.     Mr. Papilion testified that he believes Camsing has conducted business with at least three other companies located in Colorado, including Image Seller and Imagery Group.

18.     On February 20, 2009, Plaintiff filed the Complaint in this matter alleging claims for breach of contract and alter ego/parent corporation liability against Defendants.  Upon the Clerk's entry of default against the Defendants, Plaintiff filed the within motion seeking judgment in its favor in the amount of $471,720.62, subject to post-judgment interest under 28 U.S.C. § 1961.

## LEGAL STANDARD

Fed. R. Civ. P. 55 governs motions for default judgment.[2]  Rule 55(b)(2) provides that: "[t]he

---

[2]While the Plaintiff brought its motion pursuant to Fed. R. Civ. P. 55(b)(1), the motion was referred to this Court presumably for jurisdictional and other considerations pursuant to Fed. R. Civ. P. 55(b)(2).

court may conduct hearings ... when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."

After an entry of default, a defendant cannot defend a claim on the merits. *See Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) ("defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"); *see also Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) ("A default judgment is unassailable on the merits."); *Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1414 (9th Cir. 1990) ("[A] default judgment generally precludes a trial of the facts except as to damages.").

Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment. *See McCabe v. Campos,* 2008 WL 576245 (D. Colo. Feb. 28, 2008) (unpublished) (citing *Black v. Lane,* 22 F.3d 1395, 1407 (7th Cir. 1994)). In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true. *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.,* 722 F.2d 1319, 1323 (7th Cir. 1983). In addition, the court accepts the undisputed facts set forth in the affidavits and exhibits. *Deery American Corp. v. Artco Equipment Sales, Inc.,* 2007 WL 437762 (D. Colo. Feb. 6, 2007) (unpublished).

"[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision of Southern Connecticut, Limited Partnership v. Smith,* 141 F. Supp.2d 277, 281 (D. Conn. 2001). A trial court is vested with broad discretion in deciding whether to enter a default judgment. *Grandbouche v. Clancy,* 825 F.2d 1463, 1468 (10th Cir. 1987); *see also Weft, Inc. v. G.C. Investment Assocs.,* 630

F. Supp. 1138, 1143 (E.D.N.C. 1986) ("upon a default, a plaintiff is entitled to a determination of liability unless he has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof").

**LEGAL ANALYSIS**

With the preceding legal standards in mind and before I consider whether damages are to be assessed in this case, I must address whether the Plaintiff has established jurisdiction, and whether its claims each state a legal basis for relief.

**I.       JURISDICTION**

In determining whether entry of default judgment is warranted, the court must first consider personal and subject matter jurisdiction.[3]  *See, e.g.*, *Williams v. Life Sav. & Loan,* 802 F.2d 1200, 1202-03 (10th Cir. 1986) (lack of subject matter jurisdiction constitutes good cause to set aside a default judgment).  The court is empowered and required to determine any personal jurisdiction issue before considering a motion for default judgment.  *Deville v. Wilson*, 208 F. App'x 629, *2 (10th Cir. 2006) (because plaintiff failed to plead facts indicating the defendant had the requisite minimum contacts with the forum state, the district court had no personal jurisdiction over defendants); *see also  Dennis Garberg & Assoc. v. Pack-Tech Int'l Corp.,* 115 F.3d 767, 772 (10th Cir. 1997) (district court erred in failing to determine personal jurisdiction issue before considering entry of default judgment).

The plaintiff carries the burden of showing the propriety of the court's exercise of personal jurisdiction over a defendant.  *Buckhannon v. Monarch Life Ins. Co.*, 46 F.3d 1150 (10th Cir. 1995)

---

[3]Here, Plaintiff asserts jurisdiction is proper under 28 U.S.C. § 1332 based on diversity of citizenship of the parties and the amount in controversy exceeds $75,000.00.

(unpublished).  However, only the well pleaded facts of a plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true.  *Id.*

A federal court sitting in diversity may only assert personal jurisdiction over a defendant if two criteria are met. "First, a federal district court may only exercise personal jurisdiction over a defendant 'who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.'" *United States v. Botefuhr,* 309 F.3d 1263, 1271 (10th Cir. 2002) (quoting Fed. R. Civ. P. 4(k)(1)(A)). Second, an exercise of personal jurisdiction under state law must comport with the Fourteenth Amendment's due process clause.  *Id.*  In Colorado, only one inquiry is necessary, as the Colorado long-arm statute "confer[s] the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions," and its requirements are necessarily addressed under a due process analysis.  *Archangel Diamond Corp. v. Lukoil,* 123 P.3d 1187, 1193 (Colo. 2005).

When evaluating personal jurisdiction under the due process clause, the Tenth Circuit conducts a two-step analysis. At the first step, the court examines "whether the non-resident defendant has 'minimum contacts' with the forum state such that he should reasonably anticipate being haled into court there." *TH Agric. & Nutrition, LLC v. Ace European Group, Ltd.,* 488 F.3d 1282, 1287 (10th Cir. 2007) (citation and quotation marks omitted).  If the defendant has sufficient contacts, the court then proceeds to ask "whether the court's exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,'" that is, whether the exercise of jurisdiction is "reasonable" under the circumstances.  *Id.* (citation and some quotation marks omitted).

The "minimum contacts" test may be met in either of two ways - general jurisdiction or

specific jurisdiction.  First, if a defendant has "continuous and systematic general business contacts" with the forum state, it may be subjected to the general jurisdiction of the forum state's courts. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414-16 (1984).  Second, even in the absence of "continuous and systematic" contacts, a state's courts may exercise specific jurisdiction over a defendant that "purposefully directed" its activities at the state's residents, if the cause of action arises out of those activities.  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-73 (1985); *see also Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004) ("A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state.").

A.      Specific Jurisdiction

Here, Plaintiff, a Colorado resident, became aware of Defendants through their outreach to Plaintiff's parent company in Maryland.  Thereafter, Plaintiff solicited a bid from Defendants on the project and, upon Defendants' successful bid, the parties established a business relationship during which they met personally on one occasion in Colorado and exchanged substantial email correspondence and telephone calls between Colorado and Defendants' places of business.  The cause of action alleged by Plaintiff arises out of the parties' business relationship.  Therefore, I must determine whether Defendants purposefully directed their activities at Colorado's residents to establish specific personal jurisdiction over the Defendants in this matter.  *See OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1092 (10th Cir. 1998) ("[p]urposeful availment requires actions by the Defendant which 'create a substantial connection with the forum state'") (quoting *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 109 (1987)).

"With respect to interstate contractual obligations . . . parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." *Burger King,* 471 U.S. at 473. However, a contract between an out-of-state party and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum. *Id.*; *see also Ruggieri v. General Well Serv., Inc.*, 535 F. Supp. 525, 532 (D. Colo. 1982) ("[b]ecause a forum-state resident is a party to the contract and it may be foreseeable that his rights in the forum state will be affected is not a sufficient basis for personal jurisdiction").

Thus, jurisdiction would not be proper in Colorado merely because one of the parties to a contract is a Colorado resident. *Ruggieri*, 535 F. Supp. at 535. Courts in Colorado have refused personal jurisdiction over certain out-of-state defendants on the basis of insufficient minimum contacts where those defendants have entered into and allegedly breached a contract with a Colorado resident. *See SGI Air Holdings II LLC v. Novartis Int'l, AG*, 192 F. Supp.2d 1195 (D. Colo. 2002) (except for the coincidence that Plaintiff and its broker were in Colorado, defendants did not initiate any activity that was peculiar to Colorado, did not visit Colorado in connection with the sale of the aircraft, did not personally conduct other business in Colorado, and did not own property on their own behalf in Colorado); *see also National Business Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp.2d 1250, 1254 (D. Colo. 2000) (the court found no personal jurisdiction where defendant entered into two listing agreements with plaintiff and initiated numerous telephone and fax communications with plaintiff regarding those agreements, but had no other contacts with Colorado); *Ruggieri*, 535 F. Supp. at 535 (where plaintiff solicited bids from Montana defendants, accepted the bids in Colorado, the parties exchanged letters regarding the contracts, defendants

received from plaintiff two checks, one drawn on a Colorado bank, as advance payment on the contracts, and defendants performed no work in Colorado, the Court found no personal jurisdiction); *Automated Quill, Inc. v. Chernow*, 455 F. Supp. 428, 429 (D. Colo. 1978) (no personal jurisdiction where defendants did not come into Colorado for either negotiations or execution of the licensing agreement in question; they did not initiate any activity peculiar to Colorado which was undertaken on defendants' behalf; the licensing agreement in question was not issued in conjunction with any other Colorado activity; the defendants' activities as licensees were not specifically directed to Colorado; and there was no evidence that defendants maintained an agent within the State of Colorado, a place of business, employees, a bank account, or any subsidiaries which did business within the state, exercised ownership over any real or personal property within the state, nor entered into any contract in the state or any contract to be performed within the state).

Here, following the same analyses described above, the Court concludes that Defendants have not purposefully directed their activities at Colorado to create a substantial connection with the state. The Plaintiff initiated contact with Defendants by soliciting a bid on the project; Defendants did not initially reach out to Colorado. The Plaintiff has not established that Defendants maintain offices, have bank accounts or other property, or are registered to do business in Colorado. The transaction underlying the parties' agreement is the manufacture, purchase and delivery of raw goods, none of which is or was performed in Colorado. The purchase orders were issued from Plaintiff's Maryland office, the goods purchased were shipped to Maryland, and the payments made by Plaintiff for deposits on the purchase orders were originated by the Maryland office through its bank account, presumably in Maryland. The only efforts the Defendants made to reach out to a Colorado resident in this case were the telephone calls and emails exchanged with Plaintiff's

Colorado agent, Pete Papilion, regarding the project, as well as one meeting with Mr. Papilion at

G&G's Colorado office to discuss operations of the project.  *See SGI Air Holdings II LLC*, 192 F.

Supp.2d at 1202-03 (noting that where the only contacts are sending and receiving of electronic

communications and the defendant has entered the forum state to discuss details of a contract, courts

have found no personal jurisdiction).

　　While the Plaintiff attests that Defendants may be doing business with other companies in

Colorado, Plaintiff has provided nothing other than conclusory statements not only that Defendants

are conducting business here but also that the companies are located in Colorado.

　　The Plaintiff cites a number of cases to support its arguments that Defendants have made

sufficient contacts with Colorado to establish specific jurisdiction; however, this Court finds the

facts of those cases distinguishable from the case at bar and, thus, not persuasive.  *See, e.g., Martinez

v. Farmington Motors, Inc.*, 931 P.2d 546, 548 (Colo. App. 1996) (New Mexico defendant made

substantial and continuing efforts to market its vehicles to residents in Colorado, including

advertisements in Colorado newspapers and phone books); *Intercon, Inc. v. Bell Atlantic Internet

Solutions, Inc.*, 205 F.3d 1244, 1247-48 (10th Cir. 2000) (after it had notice that it was inadvertently

routing its customer's emails through an Oklahoma mail server, non-resident defendant purposefully

directed its conduct toward Oklahoma where it continued to provide Oklahoma company's address

to its new subscribers for a full two months and permitted thousands of its old customers access to

the Oklahoma server for additional seven weeks, despite having the ability to prevent such access

immediately); *People ex rel. Jeffers v. Gibson*, 508 P.2d 374, 376-77 (Colo. 1973) (court found no

personal jurisdiction over Oklahoma defendant who had insufficient contacts with Colorado);

*Marquest Med. Prods., Inc. v. Daniel, McKee & Co.*, 791 P.2d 14, 16 (Colo. App. 1990) (where

allegations of torts[4] included money and products coming out of Colorado, the court found that the

consequences of defendant's activities had a substantial connection with Colorado); *OMI Holdings*,

149 F.3d at 1091 (found limited minimum contacts that offended notions of due process where

defendants issued insurance policies agreeing to defend insureds from suit in any United States

forum and insureds brought suit alleging wrongful refusal of such defense); *Vogan v. County of San*

*Diego*, 193 P.3d 336, 340 (Colo. App. 2008) (where the non-resident defendant's intentional and

tortious actions were expressly directed at causing a harmful effect with the forum state, a sufficient

nexus existed between the defendant and Colorado to establish personal jurisdiction).

The Court finds that, under these circumstances and the prevailing case law, Defendants'

contacts with Plaintiff are not sufficient to establish specific jurisdiction necessary to hale

Defendants into Colorado.

B.     General Jurisdiction

Plaintiff alleges that "the claims in this case arise directly from the business transacted

between the companies which defendants' contacts with Colorado furthered."  Docket #18 at ¶ 14.

Therefore, the Plaintiff does not allege that the Court has general jurisdiction over Defendants in this

case.[5]  Even if alleged on behalf of the foreign Defendant, however, the Court concludes there is no

establishment of general jurisdiction here.

---

[4]Colorado courts have found that the commission of a tort (as opposed to a breach of contract), in itself, creates a sufficient nexus between a defendant and the forum state to satisfy due process and establish specific jurisdiction.  *See Vogan v. County of San Diego*, 193 P.3d 336, 339 (Colo. App. 2008) (citing Colorado Supreme Court cases).  There are no allegations of torts committed by the Defendants in this case.

[5]The Plaintiff sets forth the requirements for establishing general jurisdiction in its brief [docket #18 at ¶ 5]; therefore, in an effort to provide a thorough review, the Court will analyze the Plaintiff's theory as if alleged.

General jurisdiction, unlike specific jurisdiction, subjects a defendant to a court's personal jurisdiction even when the controversy is not related to the defendant's activities in the forum. Specifically, "when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its *in personam* jurisdiction when there are sufficient contacts between the State and the foreign corporation." *Hall,* 466 U.S. at 414. However, these contacts must be "continuous and systematic." *Trierweiler v. Croxton & Trench Holding Corp.,* 90 F.3d 1523, 1533 (10th Cir. 1996) (quoting *Hall,* 466 U.S. at 415-16 & n. 9).

The Tenth Circuit has held that "when a foreign defendant carries on a continuous and systematic part of its general business in the forum state through its agents, that state's exercise of jurisdiction over an unrelated cause of action is reasonable and just." *Behagen v. Amateur Basketball Ass'n,* 744 F.2d 731, 733 (10th Cir. 1984) (citing *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 438, 445 (1952)). Furthermore, "as all corporations must necessarily act through agents, a wholly owned subsidiary may be an agent and when its activities as an agent are of such a character as to amount to doing business of the parent, the parent is subjected to the in personam jurisdiction of the state." *Quarles v. Fuqua Indus., Inc.,* 504 F.2d 1358, 1364 (10th Cir. 1974) (quoting *Curtis Publ'g Co. v. Cassel,* 302 F.2d 132, 137 (10th Cir. 1962)).

Even if the Court were to evaluate whether Camsing USA's activities were of such a character as to amount to doing business of the parent, Camsing Global, the evidence provided herein reflects that neither company carries on a continuous and systematic part of its general business in Colorado.

## **CONCLUSION**

The minimum contacts made between Plaintiff's Colorado agent and the Defendants in this matter do not demonstrate that Defendants purposefully directed their activities at Colorado and do not consist of continuous and systematic actions in Colorado; thus, Plaintiff has failed to sustain its burden of establishing this Court's specific or general jurisdiction over the Defendants in this case.

Based on the foregoing, and the entire record provided to the Court, I do respectfully RECOMMEND that the District Court **deny** Plaintiff's Motion for Entry of Default Judgment against Defendants pursuant to Fed. R. Civ. P. 55(b)(1) [filed May 1, 2009; docket #12] due to this Court's lack of personal jurisdiction over the Defendants.

Dated this 24th day of August, 2009, in Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge