IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-00366-MSK-MEH

G&G INTERNATIONAL, LLC,

    Plaintiff,

v.

CAMSING COMPANY, LLC, and
CAMSING GLOBAL,

    Defendants.

_____

**OPINION AND ORDER OVERRULING OBJECTIONS TO RECOMMENDATION
AND DENYING MOTION FOR DEFAULT JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Plaintiff's Objections **(# 20)** to the Magistrate Judge's August 24, 2009 Recommendation **(# 19)** that the Plaintiff's Motion for Default Judgment **(# 12)** be denied.

The factual findings in the Recommendation are essentially undisputed, and thus, the Court adopts them by reference. In summary, the Plaintiff is a Maryland corporation with its principal place of business in Colorado. Its parent corporation is located in Maryland. Both of the Defendants (collectively, "Camsing") are foreign corporations.[1] At some point, Camsing approached the Plaintiff's parent corporation in Maryland to discuss doing business. The parent corporation referred the matter to the Plaintiff corporation, and thereafter, the Plaintiff and

---

[1] Defendant Camsing Company, LLC is a Delaware corporation with its principal place of business in New York. Defendant Camsing Global is a Chinese corporation.

Camsing entered into contract negotiations. The parties reached an agreement by which the Plaintiff would send orders from certain goods to Camsing from Maryland, Camsing would ship the goods from China to the Plaintiff's office in Maryland, and the Plaintiff would make payment on the shipments through its office in Maryland. During the life of the contract, the parties engaged in frequent discussions, primarily conducted by telephone and e-mail contacts between the Plaintiff in Colorado and Camsing in New York, but on one occasion, a representative from Camsing traveled to Colorado to meet personally with the Plaintiff.[2]

---

[2]In support of its motion, the Plaintiff submitted an affidavit from Pete Papilion which states that "I am aware from representations by [one of Camsing's principals] to me of at least three other companies located in the State of Colorado with whom Camsing does or at one time did business." Mr. Papilion later testified about this issue before the Magistrate Judge, although no transcription of that testimony has been provided to the Court. The Magistrate Judge found that "Mr. Papilion testified that he believes Camsing has conducted business with at least three other companies located in Colorado, including Image Seller and Imagery Group," but the Magistrate Judge dismissed that contention as "conclusory," both as to the fact that Camsing was indeed doing business with these entities and that these businesses are located in Colorado.

The Plaintiff objects to the Magistrate Judge's finding on this point, calling that finding "improper," and contending that the Court "must accept undisputed facts set forth in affidavits and exhibits." Although the Plaintiff is correct that the Court must accept undisputed facts, the Court is not required to credit conclusions whose factual premises are not similarly established. Mr. Papilion's testimony at the evidentiary hearing is not before the Court, but assuming it was consistent with the statement in his affidavit – that he understood Camsing's principal to claim to have done business with three other Colorado companies – this Court would agree with the Magistrate Judge that such testimony is conclusory. Mr. Papilion is attesting to his understanding of what Camsing's principal said, not to the content of the the statement itself. The statement itself might be an admissible admission under Fed. R. Evid. 801(d)(2), but Mr. Papilion's interpretation of it is not. Indeed, without the statement itself, there is the significant possibility that Mr. Papilion's interpretation differs from what was said and intended by Camsing's principal. (Notably, the Plaintiff was able to identify two of the three companies, but did not submit any evidence from those companies that corroborated Mr. Papilion's understanding of Camsing's activities.) In any event, the Magistrate Judge is also correct that there is no evidence that, even if Camsing did business as claimed, that such business was conducted in Colorado. The fact that Camsing may have entered into contracts with Colorado companies – as Mr. Papilion's believes – does not lend weight to the exercise of personal jurisdiction over Camsing by this Court if those contracts, like the one with the Plaintiff, called for Camsing to perform all its activities outside of Colorado.

2

Eventually, Camsing breached the contract, and the Plaintiff commenced this action seeking redress. Neither Defendant promptly appeared and the Plaintiff moved **(# 12)** for a default judgment. This Court referred the matter to the Magistrate Judge for a recommendation. The Magistrate Judge reviewed the Plaintiff's motion, received additional briefing on the issue of personal jurisdiction **(# 18)**, and conducted an evidentiary hearing regarding the jurisdictional question. On August 24, 2009, the Magistrate Judge recommended **(# 19)** that the motion be denied for lack of personal jurisdiction. Specifically, the Magistrate Judge found that the Plaintiff's allegations of Camsing's contacts with the State of Colorado were insufficient to warrant the invocation of personal jurisdiction over Camsing in this Court. Thereafter, the Plaintiff filed timely Objections **(# 20)**, contending that the Magistrate Judge had misapplied the law governing minimum contacts and personal jurisdiction.

The Court reviews objected-to portions of a Recommendation *de novo*. Fed. R. Civ. P. 72(b). The Plaintiff does not challenge the Magistrate Judge's general recitation of the law governing personal jurisdiction, and thus, the Court adopts that discussion and deems it incorporated herein. The question presented here is whether numerous interstate telephone and e-mail contacts between a non-resident contracting with a Colorado resident, coupled with a single visit by the non-resident to Colorado to discuss the contract, constitutes sufficient contacts to permit the exercise of specific personal jurisdiction.

The Magistrate Judge correctly noted that entering into a contract with a resident of the forum state and exchanging interstate telephone calls and messages in furtherance of that contract does not, of itself, necessarily create sufficient contacts with the forum state to support the exercise of personal jurisdiction. *See generally Burger King Corp. v. Rudzewicz*, 471 U.S.

462, 478 (1985); *Far W. Capital, Inc. v. Towne,* 46 F.3d 1071, 1077 (10th Cir. 1995). As *Far W.* makes clear, the mere quantum of contacts between the forum and defendant is not determinative. Rather, the quantity of the contacts, their significance to the venture, and the overall purpose of the parties' efforts all factor into an assessment of the sufficiency of the contacts. 46 F.3d at 1077.

Here, the Magistrate Judge found – and the Plaintiff has not specifically disputed – that "throughout" the parties' six-month business relationship, "agents of [the Plaintiff] and Camsing communicated numerous times primarily via telephone and e-mail." The nature and purpose of these communications is not clear from the Recommendation or the record, but it does not appear that the communications involved administration of the parties' agreement on a day-to-day basis. As the Magistrate Judge noted, routine communications animating the primary business operations between the parties – the Plaintiff's sending of purchase orders to Camsing and the Plaintiff's payment of Camsing upon delivery – originated from the Plaintiff's office in Maryland, not Colorado. *Docket # 19 at ¶ 10, 16.* Rather, the record appears to indicate that the communications between Mr. Papilion in Colorado[3] and Camsing occurred in non-routine circumstances – *e.g.* when there was some problem with an order or where one party sought to change the terms of an order. *See e.g. Docket # 18, Ex. 9.* A fair reading of this evidence indicates that although the contacts between the parties may have been numerous, they were slightly-less significant than the primary communications – ordering and payment – upon which

---

[3]This Court notes that the e-mail communications by Mr. Papilion in the record indicate that he was using an e-mail address issued by G&G Outfitters, Inc. (the Plaintiff's parent corporation in Maryland), rather than an address associated with G&G International (the Colorado-based subsidiary).

the business venture was based. More importantly, because nothing in the contract called for either party to perform any particular functions in Colorado, these communications were directed into Colorado only by the fortuitous fact that Mr. Papilion, the contact person for the Plaintiff, was located there instead of Maryland. Put differently, if Mr. Papilion elected to send or retrieve his e-mail messages remotely (say, while on vacation or when visiting the parent corporation's headquarters in Maryland), or took business calls on a cellphone while he was traveling, the only connection between Colorado and the parties' communications would be severed completely. This Court finds that such a slim link between the parties' communications and the State of Colorado is precisely the kind of fortuitous and attenuated connection that is insufficient to support the exercise of personal jurisdiction.

The question then becomes whether the single instance in which Camsing's representatives met with Mr. Papilion in Colorado is enough to alter the result. The mere fact that a party physically came to the forum state in furtherance of a business transaction does not compel the conclusion that minimum contacts are satisfied. For example, in *Encore Productions, Inc. v. Promise Keepers*, 53 F.Supp.2d 1101, 1117 (D. Colo. 1999), the Indiana plaintiff contracted with an individual in Georgia to service the plaintiff's obligations under a separate contract with the Colorado defendant. When the relationships soured, the plaintiff commenced suit against both parties in Colorado, and the individual, in turn, challenged the Colorado court's jurisdiction over him. The court noted that although the contract between the plaintiff and the individual "contemplated business activities involving a Colorado based corporation [but] there is no showing [the individual] transacted business in Colorado." *Id.* at 1117. Relying primarily on *Ruggieri v. General Well Service, Inc.*, 535 F.Supp. 525, 532 (D.

Colo. 1982), the court went on to find that the individual's few contacts with the Colorado defendant, including telephone calls and a personal visit, were insufficient to support jurisdiction. *Id.*

*Ruggieri,* in turn, discusses the minimum contacts analysis in the context of personal jurisdiction based on a contract between a resident party and a foreign party. In *dicta*,[4] the court stated that "[e]ven if a defendant enters the forum state to discuss with the defendant some of the details of operating the contract, this contact alone is not sufficient for personal jurisdiction." *Id.* at 532, *citing Associated Inns & Restaurant Co. of America v. Development Associates*, 516 F.Supp. 1023, 1026 (D. Colo. 1981). In that case, a foreign defendant entered into a contract with the Colorado plaintiff to manage a hotel in Oregon.[5] In doing so, there was "a meeting between agents of the parties in Colorado to discuss some operational details of the contract." *Id.* at 1025. The court found this single contact was insufficient to give rise to personal jurisdiction

---

[4]There is no suggestion in *Ruggieri* that the defendant had, in fact, traveled into the forum state to negotiate or administer the contract.

[5]The Plaintiff here argues that *Associated Inns*' finding of insufficient contacts is not apposite, as the contract at issue there was entered in Ohio, and the plaintiff thereafter unilaterally moved to Colorado and (unsuccessfully) attempted to claim personal jurisdiction over the defendants in Colorado. This is a correct statement of what occurred regarding some of the defendants, but the opinion makes clear that the factual posture is different with regard to defendant Development Associates Management:

> Defendant Development Associates Management entered into a management agreement for the Hilton Hotel in Eugene, Oregon on July 1, 1980. Although plaintiff had its principal place of business in Colorado when the parties executed this agreement, the defendants signed the agreement in Eugene.

*Id.* at 1024-25 (emphasis added). This Court has relied only upon that portion of the opinion that addresses the claim against Development Associates Management, *id.* at 1027.

over the defendants in Colorado, noting that "the one Colorado meeting was not even related to either the formation or the alleged breach of the contract." *Id.* at 1027.

With these cases in mind, the Court turns to the significance of the meeting between the Plaintiff and Camsing's agents in Colorado. Mr. Papilion's affidavit states that "[o]n one occasion in approximately May or June of 2008," he met with Camsing's agents in Colorado. The affidavit does not state the purpose of this meeting, but it is apparent that it occurred after the parties had commenced their business relationship in March 2008, and, perhaps, prior to the date on which Camsing began allegedly breaching the contract. *See Docket # 1, ¶ 14* (alleging that "As early as June of 2008 numerous issues arose regarding Defendant Camsing's ability to meet its obligations under the agreement" and citing to exhibits dated August 2008 in support). Based on cases such as *Associated Inns* and *Encore Productions*, this Court finds that this single meeting is insufficient, even in conjunction with the parties' communications into and out of Colorado, to give rise to personal jurisdiction here. *Associated Inns* makes the cogent point that the weight to be given to a physical meeting in the forum state depends, in some degree, on the purpose for which that meeting is conducted. A meeting to form a contractual relationship or to address alleged breaches thereof would logically carry more weight in the "minimum contacts" analysis than a routine meeting to address an ongoing contractual agreement, as the former more likely suggests the parties' "purposeful availment" of legal rights and protections in the forum state than do the latter. By all appearances in the record, the purpose for which Camsing's representatives traveled to Colorado had nothing to do with contract formation or breach, and thus, carries less significance in the analysis than a visit otherwise might.

Ultimately, the "minimum contacts" analysis requires a holistic appraisal of the

circumstances by the Court, and it is at that point that the Plaintiff's position becomes most unpersuasive. The touchstone of the inquiry is whether Camsing "purposefully directed [its activities] towards residents of" Colorado. *Burger King*, 471 U.S. at 476. Viewing the record as a whole, the Court cannot say that it did. By all appearances, Camsing's primary business activities were directed towards Maryland, where it received purchase orders from the Plaintiff, delivered the merchandise, and received payment. It undoubtedly entered into a contract with a Colorado resident, and engaged in communications and contacts with Colorado that one might reasonably expect when servicing such a contract. But it is equally clear that nothing in that contract called for any performance to occur in Colorado. More importantly, Camsing's contacts with Colorado flowed entirely from the fortitous fact that Mr. Papilion – the person whom the Maryland-based parent corporation had designated to handle the project – resided there. Camsing did not seek out the Plaintiff in Colorado; rather, the evidence indicates that Camsing sought out the parent company in Maryland, who, in turn, directed them to Mr. Papilion in Colorado. Moreover, the record does not indicate that Camsing undertook any activities in Colorado other than those associated with the ordinary administration of a contract with a Colorado resident. To hold that these ordinary acts of administering the contract give rise to personal jurisdiction would contradict the basic proposition in *Burger King* that merely entering into a contract with a forum resident is insufficient to give rise to personal jurisdiction; it makes little sense to say that entering into a contract is not enough, but performing the types of actions that one can reasonably expect contracting parties to do is enough. Accordingly, this Court finds that the Magistrate Judge's conclusion was correct.

The Court has carefully considered the cases cited by the Plaintiff in its objections and

finds them to be inapplicable. The Plaintiff cites *Haliburton Co. v. Texana Oil Co.*, 471 F.Supp. 1017, 1018 (D. Colo. 1979) for the proposition that "[b]y engaging in telephone conversations with [Mr. Papilion] in Colorado upon which the subsequent agreement was based, Camsing transacted business." In *Haliburton*, an individual, James, was sued for failing to honor a personal guaranty. James was a 50% owner of the defendant, a Colorado corporation that had defaulted on an agreement with the plaintiff for certain services performed for the corporation in Texas. In an attempt to fend off a lawsuit, James' co-owner in the company traveled to Colorado to negotiate personal guarantees of the company's obligations. The co-owner, in person, and James, via telephone from Texas, agreed to issue personal guarantees. The co-owner signed his in Colorado and James signed his in Texas.

When James later challenged the Colorado court's jurisdiction over him, the court found that James "[w]hile not physically in Colorado . . . did however participate in critical telephone conversations," and that "by having engaged in these telephone conversations, James [ ] transacted business in Colorado and caused important business consequences in this state." *Id.* at 1019. In addition, the court found the issuance of the promissory note by a non-resident in favor of a forum resident was a sufficient contact.[6] *Id.* A superficial reading of *Haliburton* might lead to the conclusion that telephone calls to a person in the forum state for the purpose of negotiating a contract are, of themselves, sufficient contacts.[7] But this is hardly the full scope of *Haliburton*.

---

[6]Although the court did not mention it in its analysis, it would also seem that James' 50% ownership of a Colorado corporation is powerful – indeed, perhaps dispositive – evidence of sufficient contacts with Colorado.

[7]Such a reading would, of course, be inconsistent with many opinions, such as *Encore Productions* and *Ruggieri*, that conclude that telephone contract negotiations with a resident of the forum state are, by themselves, insufficient.

Viewed holistically, *Haliburton* involved a corporate entity doing business in Colorado; the entity defaulted in performance of its obligations; this resulted in one of the owners in the corporation traveling to Colorado on behalf of himself and his co-owner to negotiate a resolution; the absent co-owner participated in the negotiation by telephone; the negotiation resulted in the owners of the corporation issuing undertaking personal obligation to guarantee the debt of the corporation; subsequently the both owners issued the personal guarantees in accordance with the negotiated agreement. Focusing on the telephone contact, alone, is too narrow an interpretation of *Haliburton*. It recognizes that the giving of a voluntary guarantee for an entity doing business in Colorado creates minimum contacts with Colorado, and rejects a distinction between the guarantor who physically participated in the negotiations in Colorado and the guarantor who participated in the negotiations by telephone. When considered comprehensively, the facts of *Haliburton* are materially different from those presented here.

The Plaintiff also relies upon *Duckworth v. M.M Cole Publishing Co.*, 552 P.2d 520 (Colo. App. 1976) for the proposition that "Colorado courts have found such physical presence in Colorado by a non-resident in connection with the alleged wrong or damage as persuasive." This Court does not read *Duckworth* as standing for that proposition.

In *Duckworth*, the non-resident defendant initiated a contact with the plaintiff in Colorado, offering to enter into a contract with him. The agreement was that the plaintiff would draft certain documents in Colorado, which he would then send to the defendant. When difficulties arose over the contract, representatives of the defendant traveled to Colorado to meet with the plaintiff. When the plaintiff sued over the contract in Colorado, the defendant challenged personal jurisdiction and the trial court agreed, dismissing the suit. The Colorado

Court of Appeals reversed, finding two contacts by the defendant in Colorado as sufficient - the defendant's initiation of contact and solicitation of the plaintiff in Colorado, and the anticipation that the contract was to be performed in Colorado. *Id.* at 35. Nowhere in the court's analysis is the visit to Colorado by the defendant's representatives mentioned.

The facts of *Duckworth* are distinguishable from the facts in this case. Here, the Plaintiff's contract with Camsing was not initiated in Colorado by Camsing (but rather, referred there by the Plaintiff's parent corporation), and the contract did not require performance in Colorado.

Accordingly, the Court **OVERRULES** the Plaintiff's Objections **(# 20)**, and **ADOPTS** the Recommendation **(# 19)** in its entirety. The Plaintiff's Motion for Default Judgment **(# 12)** is **DENIED**. Because the Court has no personal jurisdiction over the Defendants, the Complaint **(#1)** is **DISMISSED** pursuant to Fed. R. Civ. P. 12(b)(2). The Clerk of the Court shall close this case.

Dated this 9th day of February, 2010

                                        **BY THE COURT:**

                                        Marcia S. Krieger
                                        United States District Judge